# CHARLESTON.

KENOVA TRANSPORTATION COMPANY *v.* THE MONONGAHELA RIVER CONSOLIDATED COAL & COKE COMPANY.

Submitted September 10, 1904.    Decided October 25, 1904.

1. DAMAGES—*Negligence—Accident.*

The towboat A. was proceeding down the Ohio River, which was then at a stage of thirty-eight feet, with a fleet of ten loaded coal barges, and a fuel boat. At G., in the night time, she attempted to land to avoid the danger incident to fog, then coming upon her, but was unable to do so on account of logs and log rafts fastened to the river banks. She then attempted to run below the bridge which spans the river at K. before the fog should render it impossible for her pilot to see objects by which to steer the boat; but before she had gone half the distance to the bridge, the fog came upon her so densely that the sight of all objects within and beyond the river was entirely cut off. The engines were immediately reversed, and the wheel set to revolving backward to check her forward movement. In this condition, the boat and tow drifted down with the current, the front end of the tow struck a pier of the bridge, and being cut loose from the tow boat, in order to save her, part of the tow went on the inside, and part on the outside, of the pier. A loaded barge thus released struck plaintiff's wharf boat, moored to the West Virginia bank of the river about two hundred and fifty feet below the pier and did damage thereto. At the time, the crew of the boat, by reason of the fog, could neither see the lights on the bridge, nor other objects in the river, or on the shore, not immediately present, and did not know that the pier was the object which had been struck by the tow. *Held,* that the injury to plaintiff's wharf boat was the result of inevitable accident, and that defendant is not liable therefor. (p. 75).

Error to Circuit Court, Wayne County.

Action by the Kenova Transportation Company against the Monongahela River Consolidated Coal and Coke Company. Judgment for plaintiff. Defendant brings error.

*Reversed.*

CAMPBELL, HOLT & DUNCAN, for plaintiff in error.

SIMMS & ENSLOW, for defendant in error.

MILLER, JUDGE:

The defendant in error, Kenova Transportation Company, instituted its action in the circuit court of Wayne county, against the plaintiff in error, Monongahela River Consolidated Coal and Coke Company, and filed its declaration therein, alleging, in substance, that on the 30th day of May, 1901, it was the owner of a certain wharfboat at the town of Kenova, in the county of Wayne, and then had the same moored in a safe, proper and secure manner at the wharf at the usual and customary place at the said town of Kenova on the Ohio River; that the defendant company, on the day and year aforesaid, so carelessly, negligently and improperly handled, managed and navigated a certain steamboat known as, and called, the "Acorn," as to cause it and its barges by the said steamer then being towed, to be run against the plaintiff company's wharfboat, whereby great damag was caused thereto, without the fault of the plaintiff. To the declaration there was a plea of not guilty by defendant, issue joined thereon, trial by a jury had, and verdict in favor of plaintiff for two hundred dollars, which the defendant moved the court to set aside, as being contrary to the law and evidence; but the court refused to do so and entered judgment in favor of the plaintiff thereon for said two hundred dollars, and interest on the same from the date of the verdict until paid, and the costs of the action.

The case is here for review upon writ of error, granted to the denfendant below. The evidence proves that, on the date mentioned, the river had a stage of thirty-eight feet of water at Kenova; that plaintiff's wharfboat was moored to the West Virginia bank about two hundred and fifty feet below the Kenova Bridge, which spans the Ohio River at that point; that, at about 3:30 o'clock on the morning of that day, the wharfboat was struck by a barge loaded with coal, which crushed a hole in, and otherwise injured the wharfboat; tore her from her moorings, and set her adrift on the river. Plaintiff's only witness, present at the time of occurrence, swears that he was in charge of the wharfboat; that between 1:30 and 2:00 o'clock that morning, he pulled her close to shore and fastened her with two lines; that about 3:30 in the morning, he heard a steamboat whistling a distress whistle in the fog; that he got a lantern and went down stairs; that he then heard the Captain say: "Cut her loose and

come on board," and that they cut her loose, (meaning the tow boat) ; that it (meaning the tow) sprung apart, and part of the tow went on the outside of the pier of the bridge, and part went on the inside; that the part which came on the inside struck the wharfboat; that the barge which struck her was loaded with coal; that it struck the head of the wharfboat, broke one of the side lines, pulled the head lines off the post, and tore the wharf-boat loose; that the weather was foggy; that witness could see the steamboat, when the barge struck the wharfboat; that he could then see the lights on the bridge above, and on the steam-boat; and could hear the crew talking on the boat.

The defendant's evidence proves that the steamer "Acorn" was a towboat, proceeding down the Ohio River, towing ten barges loaded with coal and a fuel boat; that the tow was not too large to be safely and properly managed under ordinary condi-tions; that the boat was officered and manned by a full, experi-enced and efficient crew; that the first part of the night preced-ing the 30th day of May, 1901, was good for navigating a boat on the river; that, during the early part of the night, there were a few clouds; afterwards, moonlight, but clear and cool weather about midnight. Near 2:00 o'clock in the morning, when the boat was about two miles above Guyandotte, some fog was ob-served. The Captain immediately ordered all the men to their places and the lines to be made ready for the purpose of effect-ing a landing at Guyandotte. When the boat reached that place and attempted to land, she struck a log raft with her tow, and was turned around in the river with her bow up stream; but succeeded in again turning her head down stream. It being ob-served by the Captain that much timber was tied to the river banks on both sides thereof, and believing that it would be dan-gerous to again attempt a landing, it was then determined to run below Kenova Bridge, if possible, before the fog became too dense for safe navigation. Accordingly, the order was given to "gong the boat," or put on full steam in order to reach and pass the bridge before that should occur; but before the boat had traversed half the distance to the bridge, the fog became so thick that it was impossible to see objects from the pilot house to the barges below. The engines were then reversed and the wheel set to revolving backward in order to slacken the forward movement of the boat. In this condition the boat with her tow

floated down the stream, the officers and crew being unable to see the banks of the river, hills or any other object not immedi-ately present. The front end of the tow soon struck the pier of the bridge next to the West Virginia shore. The towboat swung toward the river bank, and some of the crew jumped on shore with lines and made her fast, while others cut the cables and let the barges go, in order to save the boat. It is further shown that the lights on the bridge and on the bank of the river could not then be seen by the men on the steamboat; that they did not then know just where they were, or what object had been struck by the tow; that everything possible was done by the crew to save the boat and tow; and that under such conditions and cir-cumstances, nothing available would have saved the coal barges, seven of which were lost.

The Ohio river is navigable and is a public highway in the highest and broadest intendment possible. *Town of Ravens-wood* v. *Fleming,* 22 W. Va., 52; *State* v. *Faudre,* 54 W. Va. 122. Both the wharfboat and towboat were employed in a lawful busi-ness, and each was entitled to the reasonable use of the river, but they thereby assumed the ordinary risks of navigation.

In the suit of the Stella McClosky against the towboat Joseph W. Gould, 19 Fed. Rep. 785, it is held that "in case of collision the libelant must show the alleged negligence by a fair prepon-derance of the evidence. Running on the Ohio River in a fog is not negligence *per se.*" "Where the collision occurs exclu-sively from natural causes, and without any fault or negligence of either, the rule of law is that the loss must rest where it fell. The mere fact that one vessel strikes and damages another, does not of itself make her liable for the injury, but the collision must in some degree, be occasioned by her fault. It, therefore, de-volves upon the libelant, as a part of his case, to show affirma-tively the fact of the respondent's negligence, or the existence of those circumstances and conditions from which negligence may be legally inferred." *The Florence P. Hull,* 14 Fed. Rep. 416. In *Van Dyke* v. *The Bridgeport,* 35 Fed. Rep. 159, it is said: "Where a steamer was running in a bank of fog as slowly as it was possible for her to do under the circumstances, a collision between such steamer and a schooner at anchor was held to be an inevitable accident imposing no liability for damages upon the steamer. In the case of *The Morning Light,* 2 Wall. (U. S.)

550, it is held that a collision resulting from the darkness of the night, and without the fault of either party, is an inevitable accident," and, in its opinion, the court says: "Reported cases where it has been held that collisions occurring in consequence of the darkness of the night and without fault on the part of either party, are to be regarded as inevitable accidents, are numerous. * * * * Viewed in that light, inevitable accident may be regarded as an occurrence which the party charged with the collision could not possibly prevent by the exercise of ordinary care, caution and maratime skill."

The evidence in this case is clear and convincing that, as soon as fog was discovered, an attempt was made to land the boat, which failed on account of the log rafts at the river bank; that the boat, by its search light, discovered the presence of other logs along both banks to such an extent that the Captain deemed it unsafe to again attempt a landing. The river was at a high stage, with necessarily a rapid current. The proof shows that the heavy tow, and the towboat were about nine hundred feet in length. Their control and management, at that time, under the conditions and circumstances, required much skill and good judgment. It is also shown that logs and rafts were fastened to the banks on both sides of the river from above Guyandotte to Kenova, thus making it hazardous to land or attempt a landing by a boat with a tow at any point along that portion of the river. The plaintiff, however, offered evidence tending to contradict the defendant's testimony on this point; and also tending to show that there was much of the banks and shores above Kenova unobstructed by logs, or otherwise. The witnesses, however, are not shown to be steamboat men or familiar with navigating boats.

There is no contention about the density of the fog before and at the time the wharfboat was struck, or of the inability of the officers and crew of the Acorn to see the lights on the bridge, or other objects, or that the collision could have been prevented by the exercise of ordinary care, caution or maratime skill, on their part.

Before the boat had gone half the distance from the place of the attempted landing to the bridge, the fog came down upon her, and completely hid from view all objects in the river or beyond it. It is proved by river men of long experience that the

conduct of the officers and crew of the Acorn was proper under the circumstances. According to the rules established by the cases cited, the plaintiff has failed to show negligence on the part of defendant by a fair preponderance of the evidence.

Upon the facts and circumstances of this case, we are of opinion that the steamboat Acorn was without fault, and therefore not guilty of negligence; that the injury occasioned to plaintiff's wharfboat was an inevitable accident; and that the plaintiff's evidence was and is plainly insufficient to sustain the verdict of the jury rendered as aforesaid.

We therefore reverse and annul the judgment complained of;. set aside the verdict of the jury; grant to the defendants a new trial of the action; and remand the case to the circuit court for that purpose.

*Reversed.*